**TEXAS FARM BUREAU, James T. Wood, Don Smith, Russ Arnold, and Warren H. and Anna B. Madson**

v.

**Richard E. LYNG, Secretary of Agriculture, and United States Department of Agriculture.**

No. M–88–095–CA.

United States District Court, E.D. Texas, Marshall Division.

Sept. 28, 1988.

John R. Bolton, Asst. Atty. Gen., Robert J. Wortham, U.S. Atty., Steven M. Mason, Asst. U.S. Atty., Richard M. Evans, Asst. Director, Alice M. Smith, Atty. for Office of Immigration Litigation Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

HALL, District Judge.

This is an action for declaratory judgment and injunctive relief brought by plaintiffs [1] against Richard Lyng, Secretary of Agriculture and the United States Department of Agriculture principally under the Immigration Reform and Control Act of 1986, P.L. 99–603, 100 Stat. 3359 (1986) ("IRCA" or the "Act"). The complaint alleges that Secretary Lyng exceeded the authority granted by Congress and acted arbitrarily in promulgating definitional regulations, and as a result plaintiffs are being denied the right to receive the benefits of the Special Agricultural Workers (SAW) program as set forth in IRCA. Plaintiffs request that their right to receive the SAW program benefits under IRCA be declared, and defendants be permanently enjoined from denying plaintiffs such benefits through enforcement of these regulations. Presently before the Court is the plaintiff's motion for summary judgment and defendants' cross motion for summary judgment. For the reasons stated in this opinion, the Court shall deny plaintiffs' motion for summary judgment and grant the cross motion for summary judgment of the defendants.

Congress enacted IRCA to assure growers of a labor supply and to protect laborers from employer abuse. U.S.Code Cong. & Admin.News 1986, 5649, 5687–5689. The Act provides lawful temporary resident status to aliens who qualify for the SAW program created by the Act. 8 U.S.C. § 1160(a). To be eligible under the program the alien must apply in the 18–month period beginning June 1, 1987 and ending November 30, 1988, and demonstrate that

---

1. Plaintiffs include Texas Farm Bureau, a nonprofit corporation made up of state-wide agricultural producers; individual plaintiffs James T. Wood, Don Smith, Russ Arnold, and Warren H. and Anna B. Madson, each of whom are hay growers and producers in Texas.

he is otherwise admissible in the United States as an immigrant. 8 U.S.C. § 1160(a). The alien must also show that he resided in the United States and performed "seasonal agricultural services" for at least 90 days between May 1, 1985 and May 1, 1986. *Id.* The Act defines "seasonal agricultural services" to mean "the performance of field work related to planting, cultural practices, cultivating, growing and harvesting of fruits and vegetables of every kind and other perishable commodities, as defined in regulations by the Secretary of Agriculture". 8 U.S.C. § 1160(h). Once the SAW status is obtained, the applicant may seek lawful permanent residence. *Id.*

Pursuant to the express delegation of authority, the Secretary of Agriculture, following an informal rulemaking procedure, defined various components of seasonal agricultural services. Those definitions which are pertinent and being challenged by plaintiff include the following:

Critical and unpredictable labor demand—"the period during which field work is to be initiated cannot be predicted with any certainty 60 days in advance of need." 52 Fed.Reg. at 20376.

Field Work—"any employment performed on agricultural lands for the purpose of planting, cultural practices, cultivating, growing, harvesting, drying, processing, or packing any fruits, vegetables or other perishable commodities. These activities have to be performed on agricultural land in order to produce fruits, vegetables, and other perishable commodities, as opposed to those activities that occur in a processing plant or packing house not on agricultural lands. Thus, the drying, processing, or packing of fruits, vegetables, and other perishable commodities in the field and the "on the field" loading of transportation vehicles are included. Operations using a machine, such as a picker or a tractor, to perform these activities on agricultural land are included. Supervising any of these activities shall be considered performing the activities." *Id.*

Other perishable commodities—"those commodities which do not meet the definition of fruits or vegetables, that are produced as a result of seasonal field work, and have critical and unpredictable labor demands. This is limited to Christmas trees, cut flowers, herbs, hops, horticultural specialties, spanish reeds (arundo donax), spices, sugar beets, and tobacco. This is an exclusive list, and anything not listed is excluded. Examples of commodities that are not included as perishable commodities are animal aquacultural products, birds, cotton, dairy products, earthworms, fish including oysters and shellfish, forest products, fur bearing animals and rabbits, *hay* and other forage, and silage, honey, horses and other equines, livestock of all kinds including animal specialties, poultry and poultry products, sod, sugar cane, wildlife and wood." *Id.*

Vegetables—"mean the human edible herbaceous leaves, stems, roots, or tubers of plants, which are eaten, either cooked or raw, chiefly as the principal part of the meal, rather than as a dessert." 53 Fed.Reg. at 31630.

Plaintiffs, who represent hay producer's interests and individual hay growers, brought suit contending the definitional regulations of Secretary Lyng are too restrictive. Plaintiffs assert the definitions of various terms within the definition of "seasonal agricultural services" narrow the scope of IRCA more than Congress intended under the SAW program. In particular, plaintiffs contend hay was excluded from the Secretary's definition of "vegetables" and "other perishable commodities," despite the fact that hay is botanically defined as a vegetable and field work related to production and harvesting of hay is explicitly within the scope of the Act and promulgated definitions. Specifically, plaintiffs claim the Secretary's definition of "vegetables" is arbitrary, capricious and unreasonable. In the alternative, plaintiffs argue that hay is a "vegetable", as that term is defined, because hay in the form of alfalfa sprouts, alfalfa pellets and peanuts consists of human edible herbaceous leaves, stems, roots or tubers. Furthermore, plaintiffs dispute the Secretary's definition of "other perishable commodities,"

contending the Secretary's express exclusion of hay from the definition constitutes an abuse of discretion. Plaintiffs maintain that hay falls within "other perishable commodities" as defined and that the Secretary arbitrarily and capriciously excluded it. The specific exclusion of hay, plaintiffs point out, is due to the Secretary's arbitrary and erroneous conclusion that hay is not subject to "critical and unpredictable labor demands".

### SCOPE OF REVIEW

■ Congress explicitly delegated to the Secretary the authority to promulgate regulations defining the commodities included within the term "seasonal agricultural services". 8 U.S.C. § 1160(h) The scope of review of a Secretary's construction is limited to whether the regulations at issue are consistent with the statutory scheme and are reasonable exercises of the delegated power. *See generally Griffon v. United States Dept. of Health*, 802 F.2d 146, 148 (5th Cir.1986).

In determining whether the Secretary's regulations are consistent with the statutory mandate, the Court looks to the principles announced by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In reviewing an agency's construction of a statute, the Court must first ask whether Congress has directly spoken to the issue. *Id.* at 842–843, 104 S.Ct. at 2781–2782. If the Congressional intent is clear, then full effect is given to the unambiguous express intent. *Id.* On the other hand, if the statute is silent or ambiguous with respect to the question at issue, the Court determines whether the agency's interpretation of the statute is permissible. *Id.* "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious or manifestly contrary to the statute." *Id.* at 843–844, 104 S.Ct. at 2782–2783.

A court is not permitted to impose its own construction of a statutory provision for a reasonable interpretation made by the agency. *United States v. Shimer*, 367 U.S. 374, 382–383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961). In determining whether the agency's construction is reasonable, the Court confines its inquiry to the evidence before the agency, that is, the statements in the record of the rulemaking proceeding. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43–44, 50, 103 S.Ct. 2856, 2867, 2870, 77 L.Ed.2d 443 (1983). It is well established that "judges review administrative action on the basis of the agency's stated rationale and findings." *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Commission*, 751 F.2d 1287, 1325 (D.C.Cir. 1984), cert. denied, 479 U.S. 923, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986). The agency must articulate the reasons why it has exercised its discretion in a given manner. *T & S.F. Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807, 93 S.Ct. 2367, 2374, 37 L.Ed.2d 350 (1973). While the focal point for judicial review is the administrative record, the Court may rely upon the additional explanations of agency decision-makers obtained through affidavits, where the agency's rationale cannot be fully discerned for effective judicial review. *Camp v. Pitts*, 411 U.S. 138, 142–143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). The appropriate standard of review is, accordingly, limited to ensuring that the Secretary did not exceed his statutory authority and that the regulations are not arbitrary or capricious. *Batterton v. Francis*, 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed. 2d 448 (1977).

### I. PLAINTIFFS HAVE FAILED TO ESTABLISH THAT HAY IS A "VEGETABLE" UNDER THE SPECIAL AGRICULTURAL WORKERS (SAW) REGULATIONS.

■ Plaintiffs challenge the Secretary's newly promulgated regulation defining vegetables in a manner that the Secretary interprets to exclude hay. Plaintiffs take the position that hay is a vegetable. It is plaintiffs' contention that the new defini-

tion, like the earlier botanical definition of vegetables, is incompatible with the language of IRCA requiring the Secretary to include "fruits and vegetables of every kind." Moreover, plaintiffs take issue with the "human edible" requirement within the definition of "vegetables," arguing it is without support in the legislative history of IRCA. The Secretary maintains that the revised definition of "vegetables" is adequately explained and rationally based on the scientific literature and legislative intent.

Congress entrusted the Secretary with broad authority to promulgate definitions of various terms within the definition of "other perishable commodities". 8 U.S.C. § 1160(h), *see* 52 Fed.Reg. 13246 (April 22, 1987). It is clear from the legislative history and the plain language of the statute that Congress did not intend the SAW program to apply to all agricultural crops. *see* 53 Fed.Reg. 31632 (August 19, 1988). The Secretary having examined the scientific literature and history of IRCA, determined "vegetables" was a horticultural term and defined "vegetables" on that basis with reasonable limiting factors based on the scientific literature, Congressional intent, and common sense. Recently, the United States District Court for the District of Columbia concluded that it was reasonable to define fruits and vegetables in scientific terms since "Congress never indicated that an everyday definition of fruits and vegetables was to be used over a scientific definition" and plaintiffs failed "to demonstrate that a 'common' definition exists." *Northwest Forest Workers Association, et al v. Richard E. Lyng, et al,* 688 F.Supp. 1, 9 (D.D.C.1988). The Court in *Northwest Forest Workers Association* found the Act gave the Secretary broad discretion in defining "fruits" and "vegetables." *Id.*

Upon an examination of the legislative history, the Court can find nothing that reveals an intent by Congress that hay be classified as a vegetable. The statements of Mr. Knipling submitted in the course of this litigation explaining the agency's deliberations concerning the manner of defining vegetables clearly support the conclusion that hay was not considered to be a "vegetable". According to Knipling's declaration, "hay was judged ... to be neither fruit nor vegetable in that the harvested portion is the leaves and stems of forage plants which are not grown or used for human food." Declaration of Edward B. Knipling, Director, Beltsville Area, Agricultural Research Service (ARS), United States Department of Agriculture, and ARS representative to the U.S.D.A.'s Departmental Task Force, July 26, 1988 (Knipling Declar.) ¶ 5. During the comment period of the informal rulemaking process, none of the 25 comments received regarding the U.S.D.A.'s proposed regulation claimed that hay should be considered a vegetable, but rather urged that hay be included under the definition of "other perishable commodities." Declaration of Allison T. French, Special Assistant for Agricultural Labor to the Assistant Secretary for Economics, United States Department of Agriculture, July 25, 1988 (French Declar.) ¶ 22. During the most recent comment period surrounding the proposed revised definition of vegetables, the Court can find no comment suggesting that hay should be included and qualifies as a vegetable.

Plaintiffs specifically dispute the inclusion of the "human edible" limiting factor within the definition of vegetables. In the notice of the proposed rulemaking, the agency explained that the use of the term "edible" in the scientific literature was a reference to consumption by humans. 52 Fed.Reg. at 13247; *see* French Declar. ¶ 11, 13.[2] The Secretary explained that the hu-

2. The Secretary explains the incorporation of "human edible" as follows:

While the botany literature in defining fruits and vegetables makes reference to their being edible, it is clear from the context in which these definitions are discussed that the reference is to consumption of the fruit or vegetable by humans. Thus, "human edible" has been made an explicit part of the botanical definitions of fruits and vegetables in this proposed rule.

The requirement in the proposed rule that the fruits or vegetables be human edible comports with congressional intent, especially given the distinction drawn by Congress between fruits and vegetables as opposed to other per-

man edibility criteria comports with Congressional intent, as evidenced by the distinction drawn by Congress between fruits and vegetables as opposed to other perishable commodities. *Id.* Furthermore, according to the declaration of Mr. French, the task force reviewed the legislative history and noted that the Congressional discussions regarding fruits and vegetables were always in the context of human food crops. *See* French Declar. ¶ 14. More recently, the Secretary's incorporation of "human edible" in the definition of vegetables has been upheld and found to be extensively explained by the Secretary. *Northwest Forests Workers Association v. Lyng,* 688 F.Supp. at 8. Likewise, this Court finds the Secretary has adequately explained the inclusion of the "human edible" requirement and provided a rational basis for exercising his discretion in defining vegetables.

Plaintiffs finally contend that hay is a vegetable because some types of hay, namely peanuts, alfalfa sprouts, and alfalfa pellets, are human edible. Nowhere in the pleadings can the Court find allegations that plaintiffs are producing such forms of hay for human consumption. The Court further notes that peanuts grown for human consumption already come under the SAW program's definition of fruits. The task force determined that alfalfa sprouts did not fit within the regulations because they are cultivated indoors and not as a result of field work. *See* Knipling Declar. ¶ 6. Likewise, alfalfa tablets would not come under the definition of vegetables applying common sense because they are not eaten during the main course of a meal. *See* 53 Fed.Reg. 26079, 26080 (July 11, 1988). The U.S.D.A. explained that, "a commodity does not become a vegetable merely because it may be added to a dish that is eaten during the principal part of the meal." *Id.*

Alternatively, plaintiffs argue that hay is "indirectly human edible" because it is a vital food source to livestock. It appears to the Court that plaintiff's claims as to hay's edibility by humans and livestock have been raised for the first time in this proceeding. This Court is not permitted to conduct a de novo review of the facts based on a new record presented for the first time in the reviewing court. *Camp v. Pitts,* 411 U.S. at 142, 93 S.Ct. at 1244. Moreover, this Court believes plaintiffs' arguments as to hay's human edibility or indirect human edibility call for a strained construction of the definition of "vegetables", which is unsupported by the legislative history of IRCA and the U.S.D.A.'s explanations. Furthermore, this Court is unaware of the use of hay as a vegetable as that term is defined in the regulation.

## II. THE SECRETARY'S EXCLUSION OF HAY FROM THE SCOPE OF OTHER PERISHABLE COMMODITIES WAS NOT ARBITRARY AND CAPRICIOUS.

Plaintiffs allege the Secretary's exclusion of hay from the definition of perishable commodities is unreasonable and irrational and constitutes an arbitrary and capricious action. It is plaintiffs' contention that hay cannot lawfully be excluded because it is a perishable commodity under Section 1160(h) of IRCA and is within the Secretary's definition as well.

In defining "other perishable commodities" the Secretary concluded the primary criteria for determining perishability is whether a commodity is subject to "critical and unpredictable labor demands." 52 Fed.Reg. at 13246–47; 52 Fed.Reg. at 20376. This rationale was discussed in both the proposed and final rule, and believed by the Secretary to comport with the intent of Congress. *Id.* In the final promulgation the Secretary stated that "the critical and unpredictable nature of season-

ishable commodities. While the broad botanical definitions in this proposed rule include virtually all fruits and vegetables, it is estimated that few additional alien workers will be eligible to be admitted as Special Agricultural Workers as a result. "Other perishable com-

modities" is essentially a listing of those commodities that are not fruits or vegetables; but are produced as a result of seasonal field work, and have critical and unpredictable labor demands.
52 Fed.Reg. at 13247.

al agricultural services means that it is not possible to make a determination of labor needs 60 days in advance of those needs and the time of the labor needs cannot be forecast with reasonable certainty". 52 Fed.Reg. at 21373. This definition of "other perishable commodities" in terms of critical and unpredictable labor demand was held to be reasonable and supported by the legislative history. *Northwest Forests Workers Association v. Lyng*, 688 F.Supp. at 6–7. Plaintiffs do not challenge the criteria for determining perishability, but take issue with the Secretary's refusal to include hay on the exclusive list of perishable commodities.[3] The agency explained in its final rule notice the reason for expressly excluding hay from the list of perishable commodities. 52 Fed.Reg. at 20374. The Secretary admitting that hay is produced by seasonal field work concluded that because its "labor requirements ... have been largely met by the use of herbicides and mechanization ... [it does] not meet the criteria of critical and unpredictable labor demands." *Id.; see* French Declar. at ¶ 31.

Plaintiffs maintain that hay is similarly situated to hops, which was classified as a perishable commodity. In the Secretary's explanation accompanying the final rule, he commented that hops require more labor than most fruits and vegetables. He specifically pointed out that planting hops requires hand labor, and labor is required to twine the plant, weed, train, and harvest the hops. 52 Fed.Reg. at 20374. It was in this same explanation that the Secretary justified the exclusion of hay on the basis that the labor requirements had been met by the use of herbicides and mechanization. *Id.; see* French Declar. ¶ 23.

Moreover, the legislative history of IRCA indicates Congressional intent that the SAW program include as "other perishable commodities" crops which "must be harvested by hand, thereby requiring a large number of workers on very short notice,"

and not "where mechanical harvesters can be used ..." 131 Cong.Rec. S11322 (September 12, 1985) (Statement of Sen. Wilson); *see also* 131 Cong.Rec. S11325 (September 12, 1985) (Statement of Sen. Hatch); 131 Cong.Rec. S11335 (September 12, 1985) (Statement of Sen. Gorton); 131 Cong.Rec. S11606 (September 17, 1985) (Statement of Sen. Wilson); 131 Cong.Rec. S11607 (September 17, 1985) (Statement of Sen. Gorton); H.R.Rep. No. 99–682, 99th Cong. 2nd Sess., Part 1, July 16, 1985, at p. 85, U.S. Code Cong. & Admin.News 1986, 5649, 5689. The Secretary in discussing the rationale pointed out that mechanization affects the labor demands because the more mechanized a crop is, the more predictable the labor demands are. 53 Fed.Reg. at 31636. Thus, crops which are highly mechanized do not experience a critical need for a labor force on short notice. *Id.*

According to the explanation of Mr. French, the U.S.D.A. considered a number of factors in determining whether a commodity had a critical labor demand. *See* French Declar. ¶ 27. The factors included the nature and extent to which the field work activities utilized labor, the importance of the timing of these activities, effect of a failure to perform these activities and the amount of labor needed. *Id.* Mr. French points out that the planting, mowing, harvesting, raking, tedding, and baling of hay are normally a mechanized operation. *Id.* at ¶ 23. The same was found true of sugar cane by the Secretary.[4] 53 Fed.Reg. at 31636. The amount of labor required was considered by the U.S.D.A. to be a factor in determining whether a commodity had critical labor demands. *see* French Declar. ¶ 29. Because hay is so largely mechanized, there is no real critical labor demands for large numbers of workers. Since the purpose of the SAW program was to provide a force of largely unskilled manual labor, the need for a large crew was deemed to be more critical

---

**3.** The nine crops listed as perishable commodities are Christmas trees, cut flowers, herbs, hops, horticultural specialties, Spanish reeds, spices, sugar beets and tobacco.

**4.** Since the planting, cultivating, cultural practices, growing, and harvesting of sugar cane is mechanized for the most part, this represents further evidence that sugar cane does not meet the criteria of "other perishable commodities."

than a few equipment operators. The U.S. D.A. believed this factor comported with Congressional intent that the SAW program include crops which at harvest were labor intensive, but exclude those which were mechanically harvested. *Id.* at ¶ 24, 25. Though the U.S.D.A. determined hay to be a largely mechanized operation, it recognized that some manual labor was used to pick up the square bales, but further noted that this was not the generally accepted farming practice. *Id.* at ¶ 23. The U.S.D.A. found the timing of commercial hay harvesting less critical than those of commodities which would perish and become unmarketable altogether. *Id.* at ¶ 28, 30. It was noted that hay was not always harvested at optimum maturity, but nevertheless remained marketable at a reduced quality. *Id.* As to unforeseeable weather conditions, the U.S.D.A. determined that weather influences did not necessarily create critical and unpredictable labor needs because of the mechanization of hay on a national scale and the marketability of hay of a larger grade after optimum harvest period has passed. *Id.* at ¶ 32.

In determining whether there exists a rational basis, the Court has reviewed the comments contained within the administrative record. The agency record contains a number of comments urging the Secretary to include hay as a perishable commodity; however, not one comment addresses the effects of mechanization and herbicides on hay producers' labor needs, which was the stated rationale upon which the Secretary made his decision. *See* A.R. Nos. 11, 57, 482, 523, 553, 601, 602, 608, 617, 618, 833, 928, 936, 942, 943, 949, 950, 999, 1136, 1160, 1171, and 1185.

Based upon the administrative record compiled by the agency and in keeping with the legislative history of the Act and stated rationale, the Court finds that the Secretary acted reasonably in excluding hay from the scope of perishable commodities.

For reasons stated above, the Court finds the decision of Secretary Lyng and the United States Department of Agriculture to exclude hay from the Special Agricultural Worker program to be neither arbitrary nor capricious, and concludes that the plaintiffs' motion for summary judgment should be denied and defendants' cross motion for summary judgment granted.