**UNITED STATES of America, Plaintiff,**

v.

**Patricia OSTRANDER, Defendant.**

**No. 91 Cr. 838 (RO).**

United States District Court,
S.D. New York.

April 29, 1992.

Otto G. Obermaier, U.S. Atty. S.D.N.Y. New York City (Kenneth J. Vianale, Asst. U.S. Atty., of counsel), for plaintiff.

Cooley, Manion, Moore & Jones, P.C., Boston, Mass. (Harry L. Manion, III, of counsel), Lankler, Siffert & Wohl, New York City (John S. Siffert, of counsel), for defendant.

## OPINION

OWEN, District Judge.

Patricia Ostrander was a portfolio manager of several mutual funds, including Fidelity Puritan Fund, all under the umbrella of Fidelity Management and Research Company and Fidelity Management Trust Company. In the penumbral wake of the Milken scandal, she has been indicted on charges that she bought and sold hundreds of millions of dollars worth of "junk bonds" on behalf of Fidelity's various funds through Drexel Burnham Lambert, Inc. and received a covert substantial bribe payment from Drexel when she and her husband set up a nominal partnership called "Wishingstone Investments" which then subscribed to certain units of a limited partnership called "MacPherson Investment Partners" which had as an asset certain grossly undervalued warrants to purchase the common stock of one SCI Holdings, Inc., which warrants had been transferred to the MacPherson portfolio by a Drexel employee.

Defendant Ostrander moves to dismiss Count Three of the indictment. It charges:

From on or about April 11, 1986 up to and including March 1987, in the Southern District of New York and elsewhere, the defendant PATRICIA OSTRANDER while an access person of registered investment companies, namely the Puritan Fund and the Equity Income Fund, among others, and of an investment adviser, namely FMR, unlawfully, wilfully and knowingly, did fail to report to the investment companies and investment adviser for which she was an access person, information with respect to a security transaction in which she had direct and indirect beneficial ownership of the security, to wit, PATRICIA OSTRANDER did fail to report to Fidelity her purchase of limited partnership units in MacPherson Investment Partners.

I assume, as pleaded, that Ostrander was an access person of the various funds and that she knowingly failed to report to Fidelity her indirect beneficial ownership of the MacPherson units. She asserts that this charge does not allege a crime, since the indictment does not allege that Fidelity ever held or intended to acquire the MacPherson units. However, as I read the relevant statute, 15 U.S.C. § 80a–17(j), and the rule promulgated thereunder by the Securities and Exchange Commission, 17 CFR 270.17j–1, the offense does not require a showing that Fidelity ever held or intended to acquire MacPherson units. The statute, 15 USC § 80a–17(j) provides:

*Rules and regulations prohibiting fraudulent, deceptive or manipulative courses of conduct.* It shall be unlawful for any affiliated person of or principal underwriter for a registered investment company or any affiliated person of an investment adviser of or principal underwriter for a registered investment company, to engage in any act, practice, or course of business in connection with the purchase or sale, directly or indirectly, by such person of any security held or to be acquired by such registered investment company in contravention of such rules and regulations as the Commission may adopt to define, and prescribe means reasonably necessary to prevent, such acts, practices, or courses of business as are fraudulent, deceptive or manipulative. Such rules and regulations may include requirements for the adoption of codes of ethics by registered in-

vestment companies and investment advisers of, and principal underwriters for, such investment companies establishing such standards as are reasonably necessary to prevent such acts, practices, or courses of business.

The rule promulgated in accordance therewith, 17 CFR 270.17j–1 reads:

(c)(1) Every access person of a registered investment company or of an investment adviser of or principal underwriter for such investment company shall report to such investment company, investment adviser or principal underwriter of which he or she is an access person the information described in paragraph (c)(2) with respect to transactions in any security in which such access person has, or by reason of such transaction acquires, any direct or indirect beneficial ownership in the security: ...

(2) Every report required to be made pursuant to paragraph (c)(1) ... shall contain the following information:

(i) The date of the transaction, the title and the number of shares, and the principal amount of each security involved;

(ii) The nature of the transaction (i.e., purchase, sale or any other type of acquisition or disposition);

(iii) The price at which the transaction was effected; and

(iv) The name of the broker, dealer or bank with or through whom the transaction was effected.

As the Second Circuit stated in the recent *en banc* determination in *U.S. v. Chestman*, 947 F.2d 551, 557–58 (2d Cir.1991):

When Congress delegates to an agency the power to promulgate rules,

the [agency] adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner....

The [rule] is therefore entitled to more than mere deference or weight. It can be set aside only if the [agency] exceeded [its] statutory authority or if the regula-

tion is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'

quoting, *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 2405–06, 53 L.Ed.2d 448 (1977) (internal citations omitted) quoting 5 U.S.C. § 706(2)(A), (C). The Court further stated:

A delegation of authority to enact rules 'reasonably designed to prevent' fraud, then, necessarily encompasses the power to proscribe conduct outside the purview of fraud, be it common law or SEC-defined fraud. Because the operative words of the statute, 'define' and 'prevent,' have clear connotations, the language of the statute is sufficiently clear to be dispositive here.

*id.* at 558, quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

Rule 17j–1(c)(1) and (2) is designed to prevent fraudulent conduct by a highly placed executive in certain types of financial institutions by requiring the disclosure of such executive's own securities transactions, whether or not those securities are the subject of interest or purchase by a financial institution. Such reporting obviously has the tendency to prevent fraud. An executive's knowledge of the duty to report—and thus expose—all personal transactions may tend to promote faithful performance of duties by such a person entrusted with the assets of others. The rule is thus in furtherance of the statutory scheme, and any violation thereof is therefore the same as a violation of the statute itself. Given this, Count Three of the indictment, which charges that access person Ostrander unlawfully, wilfully and knowingly failed to report a certain securities transaction, states a crime, and the motion to dismiss is denied.