# WOOD *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 71.　Argued November 16, 17, 1911.—Decided April 1, 1912.

An officer of the Navy serving as aid to the Admiral under the provisions of the acts of March 2 and 3, 1899, cc. 378 and 421, 30 Stat. 995, 1024, 1045, is not entitled under the assimilating provisions of § 13 of the Navy Personnel Act of March 3, 1899, c. 413, 30 Stat. 1007, to the higher rank and pay provided under § 1019, Rev. Stat., for aids to the General of the Army, irrespective of the actual rank held by such naval officer during his period of service as such aid.

By the proviso to § 1094, Rev. Stat., which became effective prior to 1888, the office of General of the Army created by § 1096, and the rank and incidents thereto ceased, and were revived by the act of June 1, 1888, 25 Stat. 165, c. 338, only for the period of the life of General Sheridan, and again ceased on his death, since which time there is no officer of the Army to which pay of aids to the Admiral of the Navy can be assimilated under § 13 of the Navy Personnel Act of 1899.

An incongruity resulting from an omission in an act of Congress does not justify the courts exercising legislative power to create an office or pay therefor, and so *held* that the fact that the pay of all other naval officers, including aids to Rear Admirals, is assimilated to that of corresponding officers of the Army except aids to the Admiral is a matter that must be corrected, if it is to be corrected, by Congress and not by the courts.

44 Ct. Cl. 611, affirmed.

THE facts, which involve the construction of the acts of Congress relating to pay of aids to the Admiral of the Navy, are stated in the opinion.

*Mr. George A. King,* with whom *Mr. William B. King* was on the brief, for appellant.

*Mr. Assistant Attorney General Thompson,* with whom

*Mr. Frederick De C. Faust, Attorney,* was on the brief, for the United States.[1]

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The office of Admiral of the Navy was reëstablished by the act of March 2, 1899, 30 Stat. 995, reënacted in identical terms by a portion of the Naval Appropriation Act of March 3, 1899, 30 Stat. 1045, c. 421. By another provision of the same act, 30 Stat. 1024, 1025, the Admiral was given the same pay and allowances "as had been received by the last General of the United States Army.

"From October ·17, 1904, until February 29, 1908, the claimant performed the duties prescribed by an order of the Secretary of the Navy, dated October 1, 1904, which directed him to report to the Admiral of the Navy, . . . President of the General Board, . . . for duty as aid to the Admiral of the Navy, and for duty in connection with the general board." During the period within which these services were performed the claimant received the pay belonging to his rank in the Navy, which, for the earlier portion of the time, was that of Lieutenant Commander and during the remainder of the time that of Commander. He demanded the pay and allowances

---

[1] On January 31, 1912, the court directed additional briefs to be filed upon the following questions:

Did § 1096 of the Revised Statutes cease to be operative when the office of General of the Army became extinct? In other words, were not the provisions of that section repealed by force of the proviso of § 1094, Revised Statutes?

If repealed, what provision, if any, is relied upon as the basis for applying the terms of § 1096 to the claim made in this action? ·

In compliance with this order an additional brief was filed on behalf of the appellant on February 15, 1912, and on behalf of the United States on February 13, 1912.

of a Captain of the Navy, upon the theory that the Admiral of the Navy corresponded in rank with the General of the Army, that by Rev. Stat., § 1096, the General of the Army was entitled to aids, who received increased compensation as such aids by reason of the pay attached to the higher rank conferred upon them while serving as aids to the General, which higher pay the aid to the Admiral became entitled to receive by virtue of the clause of § 13 of the Naval Personnel Act of March 3, 1899, 30 Stat. 1004, 1007, c. 413, assimilating the pay of officers of the Navy to that of officers of the Army.

Section 1096, Rev. Stat., relied upon in connection with the assimilating provision just referred to is as follows:

"Sec. 1096. The General may select from the Army such number of aids, not exceeding six, as he may deem necessary, who shall have, while serving on his staff, the rank of colonel of cavalry."

This appeal was taken from a judgment of the Court of Claims dismissing the claim.

Putting aside immaterial considerations, the question upon which the controversy turns is this: In March, 1899, when the office of Admiral was re-created, were the provisions of § 1096, Rev. Stat., existing or had they been repealed, thereby causing it to come to pass that there was no law concerning aids to the General of the Army upon which the assimilating provisions of the act of 1899 could operate? We say this is the fundamental question, because it is patent that the act of 1899 which re-created the office of Admiral did not in and of itself provide for aids to that officer or fix extra compensation for such services, and therefore the right here asserted must depend exclusively upon the existence of some law providing for aids to the General of the Army and their pay, which in virtue of the application of the assimilating statute became operative as to aids to the Admiral.

While by § 1094, Rev. Stat., it was provided that the Army of the United States should consist, among other officers, of "one General," the section concluded with the following:

"*Provided,* That when a vacancy occurs in the office of General or Lieutenant-General such office shall cease, and all enactments creating or regulating such offices shall, respectively, be held to be repealed."

It is not questioned that § 1096, Rev. Stat., was a regulation concerning the office of General of the Army, and it is not disputed that that section was repealed prospectively by the proviso to § 1094 above quoted, a repeal which became operative when the event provided for the cessation of the office of General occurred. It is, further, not disputed that years before the re-creation of the office of Admiral in 1899 the result provided for in the proviso to § 1094 had taken place, and hence that § 1096, concerning aids to the General of the Army, had ceased to exist as the result of the non-existence of the grade of General of the Army to which the provisions of that section applied.

The primary contention is that § 1096 was revived as the result of the act of June 1, 1888, 25 Stat. 165, c. 338, by virtue of which Lieutenant General Sheridan was made for life the General of the Army. The secondary proposition is that the provisions of the section which it is contended were thus revived remained in force (although in abeyance) after the death of General Sheridan and despite the fact that the act of 1888, which provided for his appointment as General declared that the grade should cease on his death. The contention, however, in reason rests upon a plain misconception of the act of 1888, since it but insists that while the provisions of that act only revived the grade of General for a limited and specified purpose, nevertheless the effect of the act was to revive incidental provisions of law concerning that

office so as to cause them to continue to exist after the period during which alone the statute contemplated they should be in existence. But so to construe the statute would divide it against itself, would presuppose that it contemplated that an effect should arise from its enactment plainly at war with the purpose which its text manifests Congress intended to accomplish by its adoption. When it is considered that the grade of General of the Army had ceased to exist long prior to the act of 1888 and that the statutory incidents regulating that office, including § 1096, Rev. Stat., had also passed out of existence, we think it results that the provisions of the act of 1888 reviving the office of General and the incidents relating to that office were all controlled by the limitation of time which that act imposed. In other words, we think that the office and its incidents were but revived for the sole purposes and for the limited period specified, and none other, and therefore no subject to which that act related can be said to have been generally reënacted so as to survive the limitations which the act itself expressly contemplated.

The failure by Congress during the many years which have elapsed since the re-creation of the office of Admiral to make any provision concerning the pay of aids to that officer gives rise to the assumption of a legislative construction in accord with the view which we have expressed. The matter is not however left to mere inference resulting from silence, since although Congress in what is known as the New Navy Pay Act of May 13, 1908, 35 Stat. 127, c. 166, in terms specifically provided for the pay of every officer in the Navy, including the Admiral and embracing extra compensation to aids to Rear Admirals, made no provision whatever for compensation for services which might be rendered by an officer acting as aid to the Admiral. The incongruity, if any, which it is suggested must result from providing for extra com-

pensation for an aid to a Rear Admiral and none for aids to the higher officer, the Admiral, if admitted, would be but the consequence of legislative omission, and would not justify the exertion of judicial power for the purpose of re-creating a provision of law, concerning aids to the General of the Army, which has long since ceased to exist, in order to afford a subject upon which the assimilating provision of the Naval Personnel Act of 1899 might operate.

*Affirmed.*