**Morton H. HALPERIN et al.,
Plaintiffs,**

v.

**Henry A. KISSINGER et al.,
Defendants.**

**Civ. A. No. 1187-73.**

United States District Court,
District of Columbia.

Sept. 24, 1975.

Walter B. Slocombe, Washington, D. C., John Shattuck, New York City, for plaintiffs.

William G. Hundley, Washington, D. C., for defendant Nixon.

## MEMORANDUM AND ORDER

JOHN LEWIS SMITH, District Judge.

This matter is before the Court on former President Nixon's Motion for a Protective Order to prevent plaintiffs from taking his deposition. Relying upon *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 14 L.Ed.2d 1039 (1974), defendant contends that the presidential privilege of confidentiality bars such discovery in this civil action. He argues that plaintiffs have failed to make the showing of necessity required to overcome the presumptive privilege. Plaintiffs assert that defendant Nixon's testimony is permissible under *Nixon, supra,* and essential in the instant case, pointing out that he alone can provide answers to troublesome factual questions concerning the 1969–1971 wiretapping of plaintiffs' home telephone.

■ Initially, it is questionable whether an ex-president retains the capacity to invoke presidential confidentiality—a form of executive privilege.[1] In *United States v. Reynolds* the Supreme Court held that "[Executive] privilege belongs to the Government and must be asserted by [the head of the department involved] . . . ; it can neither be claimed nor waived by a private party." 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953). (footnotes omitted.) However, a former president should not be subjected to endless subpoenas and depositions concerning actions taken during his Administration. The incumbent president, the "head of the department," can claim the privilege on a predecessor's behalf. *Cf. Heine v. Raus*, 399 F.2d 785 (4th Cir. 1968). In the present matter, privilege has *not* been invoked by the incumbent Executive. Mr. Nixon makes the claim on his own behalf as a private citizen.

■■ Assuming *arguendo* the applicability of the privilege of confidentiality, a balancing test is necessary to resolve the competing interests of presidential privilege and the legitimate needs of the judicial process. *United States v. Nixon, supra*, 418 U.S. at 707, 94 S.Ct. 3090. While the Court in *Nixon* did not address the exact showing civil litigants must make to overcome the presumptive privilege of confidentiality, *id.* at 712 n. 19, 94 S.Ct. 3090, a strong demonstration of need without an undue invasion of presidential privacy is required. In weighing the opposing interests at stake here, the Court finds that plaintiffs have met this burden and are entitled to depose defendant Nixon.

Executive privilege exists to protect the decision-making process. The guarantee of confidentiality assures freedom "to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *Id.* at 708, 94 S.Ct. at 3107. The realm of advice, opinion, and policy formulation should be protected from public scrutiny in order to encourage candid discussion and independence by policymakers in the executive branch. *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324–26 (D.D.C. 1966).

■ On the other hand, the government's privilege of non-disclosure is not a blanket privilege. Under the Freedom of Information Act, strictly *factual material* "contained in deliberative memoranda and severable from its context" is generally discoverable. *EPA v. Mink*, 410 U.S. 73, 88, 93 S.Ct. 827, 836, 35 L.Ed.2d 147 (1973). Documents and communications may be revealed if their production is not injurious to the consultative functions of government. *Kaiser Alum. & Chem. Corp. v. United States*, 157 F.Supp. 939, 946, 141 Ct.Cl. 38, (1958).

■ Robust government debate will not suffer if Mr. Nixon must submit to an oral deposition in this action. The matter at issue does not involve classified information. Facts rather than opinions or policies are primarily sought in discovery. The decision to wiretap was made over six years ago. Thus, disclosure will not impede the executive decisionmaking process, embarrass participants in the decision, or deter future

1. *See* U.S.Const., Art. II, Sec. 1, Cl. 1. *See also Senate Select Comm. on Presidential Campaign Activities v. Nixon*, 162 U.S.App. D.C. 183, 498 F.2d 725, 729–30 (1974). Several former presidents have testified, either voluntarily or pursuant to subpoena, before congressional committees and in judicial proceedings. *See* Rotunda, *Presidents and Ex-presidents as Witnesses: A Brief*

*Historical Footnote*, 1975 U.Ill.L.F. 1. Mr. Nixon himself was recently required to give an oral deposition in the litigation concerning ownership and custody of the presidential materials of his Administration. *See Nixon v. Administrator of GSA*, Civ.No. 74–1852 (D.D.C.) (Order filed July 16, 1975). He had proposed interrogatories or a written deposition on account of poor health.

frank discussions by government officials.

Moreover, on several occasions Mr. Nixon has personally accepted responsibility for the surveillance program challenged by plaintiffs. Describing the climate of sensitive foreign policy initiatives existing in 1969 and the subsequent leaks of information to the press, he stated on May 22, 1973: "[A] special program of wiretaps was instituted in mid-1969 and terminated in February 1971 . . . .. I authorized this entire program." 9 Pres.Doc. 694 (1973). Mr. Nixon later repeated this statement in a letter to Senator Fulbright: "Where supporting evidence was available, I personally directed the surveillance, including wiretapping of certain specific individuals." [2] Mr. Nixon's answer to the complaint in this action also admits his authorization of electronic surveillance of plaintiffs' telephone. Answer to Second Amended Complaint, filed April 11, 1975. Mr. Nixon has thereby opened the door of disclosure. As in *Nixon v. Sirica,* "The simple fact is that the [events] are no longer confidential." 159 U.S.App.D.C. 58, 487 F.2d 700, 718 (1973).

Plaintiffs' demonstration of need likewise compels the taking of defendant's deposition. More than twenty witnesses have been deposed in this action and central issues remain unclear. Mr. Nixon, the government official allegedly responsible for the wiretap program, is uniquely capable of clarifying certain of these issues.[3] Plaintiffs have delineated four key areas of inquiry—the grounds for initiation of the wiretap upon their telephone, the distribution and use of information logged from the wiretap, the reasons for continuance of the wiretap, and the attempt to conceal records after termination of the wiretap. The deposition will therefore not constitute a fishing expedition into Mr. Nixon's presidency. The medium of spoken questions and answers is certainly less onerous for defendant than lengthy interrogatories. At the same time it allows plaintiffs access to information without awaiting the resolution of the complex Nixon tapes and papers litigation. In short, an oral deposition is both the least intrusive means of questioning the defendant and an effective method of conducting demonstrably relevant and essential discovery.

### ORDER

Accordingly, upon consideration of defendant Nixon's Motion for a Protective Order, the memoranda of points and authorities in support thereof and in opposition thereto, oral argument of counsel having been heard, and for the reasons set forth in this Memorandum, it is by the Court this 24th day of September, 1975

Ordered that defendant Nixon's Motion for a Protective Order be, and the same hereby is, denied, conditioned upon deposition of Mr. Nixon taking place at a location at or near his home.

2. Hearings on Dr. Kissinger's Role in Wiretapping Before Senate Comm. on Foreign Relations, 93d Cong., 2d Sess. 111 (1974).

3. *See* Report on the Inquiry Concerning Dr. Kissinger's Role in Wiretapping, 1969–1971,

Senate Comm. on Foreign Relations, 93d Cong., 2d Sess. 3 (1974). "Some questions [concerning the wiretap program] can be answered only by President Nixon." *Id.*