UNITED STATES STEEL CORPORATION, Plaintiff,

v.

Gobel MATTINGLY et al., Defendants.

Eugene E. MORRIS, etc., Plaintiffs,

v.

Gobel MATTINGLY et al., Defendants.

Civ. A. No. 79-X-188.

United States District Court,
D. Colorado.

May 23, 1980.

John R. McCall, Middleton, Reutlinger & Baird, Louisville, Ky., E. Lee Dale, Dawson, Nagel, Sherman & Howard, Denver, Colo., for plaintiffs.

C. Scott Crabtree, Asst. U. S. Atty., Denver, Colo., William P. Arnold and David H. White, Dept. of Justice, Washington, D. C., for Bruce W. Christ.

## AMENDED ORDER ON PLAINTIFF'S MOTION TO COMPEL SUBPOENA COMPLIANCE

CARRIGAN, District Judge.

THIS MATTER is before the Court on the motion of the plaintiff, United States Steel Corporation (USS), to compel subpoena compliance by a National Bureau of Standards (NBS) employee, Dr. Bruce Christ (Christ).

The motion has been occasioned by litigation, in state and federal courts in Kentucky, arising from the explosion or rupture of a large steel cylinder manufactured by USS. The accident, which occurred on October 27, 1977, killed two men, injured four others, and damaged property.

Shortly after the mishap, public and private investigators appeared on the scene to ascertain the cause. USS contends that the Kentucky State Fire Marshal assumed control of the accident scene, and that the Department of Transportation appointed Christ as its principal investigator. Thereafter, USS claims, access to the accident scene and evidence was restricted and cylinder fragments were impounded. In his affidavit, Christ disputes those allegations and asserts that he did not participate in the investigation until eight weeks after the explosion. Moreover, he denies that he was DOT's chief investigator. Christ further denies that cylinder fragments were impounded for him and he denies that access to either the accident site or the evidence was restricted. In any event, Christ authored a report with findings and conclusions adverse to USS.

Meanwhile, wrongful death and personal injury actions had been filed against USS in Kentucky. USS, in a consolidated action in the United States District Court for the Western District of Kentucky, has sued for contribution and indemnity for any amounts it has paid for settlements or may have to pay in those lawsuits. Even though USS nominally is a plaintiff in the contribution and indemnity action, its actual position is that of a defendant facing potential liability for sizeable damages occasioned by the deaths, injuries and property losses.

After the federal judge assigned to USS' contribution and indemnity action ruled that Christ's report would be admissible as evidence against USS in the trial of that case, USS sought to depose Christ and have him produce documents relating to his report. Although USS subpoenaed Christ, NBS' legal adviser instructed him not to comply with the subpoena. In asking this Court to compel subpoena compliance, USS has filed an affidavit asserting that Christ used "information, data and actual materials" which were not available to USS and, since they were destroyed during testing, cannot now be made available to USS. Thus, USS maintains that Christ's deposition and the documents it seeks to discover constitute the only sources of information it must have to meet and defend against Christ's report when it is introduced as evidence in the contribution and indemnity action.

Were it not for Christ's status as an employee of NBS he would unquestionably be subject to the same rule of law that governs other mortals and would not be heard to refuse to testify to facts and opinions within his ken. The question for decision is whether the NBS may confer on its employees and their files a privileged status exempting them from the general law governing duties of witnesses to comply with subpoenas and produce evidence needed by the courts.

Before having the subpoena served, USS had asked NBS' legal adviser to authorize Christ's testimony and allow him to produce the requested documents. That request was made pursuant to an NBS rule that:

"[n]o NBS employee shall give testimony in any legal proceeding in which the United States Government or an agency . . . is not a named party . . . nor produce any data, information, or record created or acquired by NBS as a result of the discharge of its official duties without the prior written authorization of the NBS Legal Adviser." 15 C.F.R. Section 275.2 (1979)

In spite of the above mentioned ruling by the district court in Kentucky, that Christ's report will be admissible at the trial, NBS persists in refusing USS' discovery requests. Having reviewed the entire file and considered the briefs in light of the precedents granting trial judges very broad discretion over discovery matters in order to advance the interest of justice, I have concluded that this Court's subpoena shall be enforced.

## I.

In establishing the NBS, Congress authorized the Secretary of Commerce to "make regulations regarding . . . such other matters as he may deem necessary for carrying this Act into effect." 15 U.S.C. Section 277. Under a commerce department organization order, the NBS Director was delegated power to perform those general functions. *See* Department Organization Order 30–2A, Section 3.01b. Apparently relying on the broad language of § 277 as its only source of authority, NBS has adopted and promulgated rules establishing a policy that:

"[i]ts employees shall not testify nor otherwise appear in legal proceedings not involving the United States or its officers or employees in their official capacity as a named party in order to produce data, information, or records which concern matters related to official duties of NBS employees or the functions of NBS." 15 C.F.R. Section 275.1(c) (1979).

NBS asserts that such controls on employee testimony are necessary to preserve its neutrality and prevent undue disruption of its employees' work routines.

The standard of review applicable to the bureau's regulations restricting employee testimony and document production is whether they exceed "statutory authority or [are] . . . 'arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.'" *Batterton v. Francis*, 432 U.S. 416, 425–26, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977).

USS has presented compelling arguments that the NBS regulations are "not in accordance with the law," because they allegedly contravene the overriding principle of separation of powers. Indeed, neither the Supreme Court nor the Congress seems to have delegated to this executive branch bureau any authority to overrule established rules of evidence defining what evidence is privileged. Thus, if the outcome of this dispute were to hinge solely upon constitutional questions, the trend of case law would seem to favor USS' contentions. *See United States v. Nixon*, 418 U.S. 683, 707, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 635, 72 S.Ct. 863, 96 L.Ed. 1153 (1952) (Jackson, J., concurring); *Halperin v. Kissinger*, 401 F.Supp. 272, 275 (D.D.C. 1975). "Judicial control over the evidence in a case cannot be abdicated [constitutionally] to the caprice" of executive agency officials. *United States v. Reynolds*, 345 U.S. 1, 9–10, 73 S.Ct. 528, 532–533, 97 L.Ed. 727 (1953). It is unnecessary, however, to reach the separation of powers issue in this case.

Other constitutional defects are apparent upon examining the arbitrary and capricious nature of the powers here claimed by NBS and the manner of their exercise in this case. The lack of procedures for hearing and standards for deciding when to allow testimony and when not, the discrimination in favor of litigants involved in cases where the United States happens to be a party (whether or not its interests are involved in the discovery being sought), and the lack of an appeal, all raise fundamental questions. This case, however, can be decided without reaching the constitutional issues, and they will be reserved for another day. The obvious ground for decision is that 15 U.S.C. Section 277, despite NBS'

contrary assertions, provides no authority whatsoever for NBS to restrict the availability of evidence in a judicial proceeding or to confer a testimonial privilege on its employees or records.

In discerning whether Congress intended to vest the NBS Director with authority to obstruct efforts of the courts to ascertain the truth through discovery, it is instructive to examine the history of one of 15 U.S.C. Section 277's statutory analogues. Originally, an executive department head was authorized to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody and use of its records, papers and property." 5 U.S.C. Section 22.[1] In 1958, Congress amended that general housekeeping statute by adding "the following new sentence: This section does not authorize withholding information from the public or limiting the availability of records to the public." Pub. L.No. 85–619, 72 Stat. 547 (1958), codified in .5 U.S.C. Section 22 (current version in 5 U.S.C. Section 301 (1979)). The purpose of this amendment was to prevent government administrators and other bureaucrats from using the statute as a basis for withholding information. H.R.Rep.No.1461, 85th Cong., 2d Sess., *U.S.Code Cong. & Ad. News* 3352, 3353 (1958).

Given the general congressional policy against concealing or blocking access to information obtained through expenditure of public funds, it is unlikely that Congress would have empowered NBS to obstruct access to information, or suppress evidence needed by the courts, without expressing such an intent in a specific provision to that effect. Congress itself has observed that when "a specific area of information must be closed to the public, legislation has been enacted accomplishing this purpose." *Id.* at 3352.

Following the guide of that congressional commentary, it becomes necessary to determine whether Congress has expressly authorized creation of a new testimonial privilege by administrative fiat. A review of the Federal Rules of Evidence, and the reports of congressional committees which dealt with those rules insofar as they concern testimonial privileges, reveals no existence of, or basis for claiming, a "bureaucratic inconvenience privilege" in federal courts. *See* Fed.R.Evid. Rule 501 and annotated committee reports (West 1979).

Indeed it seems highly unlikely that, in this era of open records and public meetings requirements, Congress would have authorized any federal bureau to conceal information from the sunshine of public disclosure absent some special circumstances evidencing compelling need. On the contrary, Congress, by modifying 5 U.S.C. Section 22 and enacting the Freedom of Information Act,[2] has endeavored to make federal agency information and files more accessible to the public. The bureau's rules, in addition to totally lacking support in any express grant of privilege, violate the prevailing congressional spirit that "disclosure of material in government files has now become the rule, not the exception." *Stokes v. Brennan*, 476 F.2d 699, 700 (5th Cir. 1973).

As a matter of fundamental fairness, too, NBS' position is untenable. Its employee's opinion, bearing the persuasive imprimatur of an official government report, has accused USS of causing multiple deaths, injuries and property losses. That report will be in evidence at the trial. It would be egregiously unfair to deny USS an opportunity to confront and cross-examine its accuser, to question his qualifications to render the opinions stated, to learn the facts on which his conclusions were based and test whether he mistakenly based conclusions on incorrect factual information, and to discover any prejudice which might undermine his credibility. Only through Christ's deposition can his report be tested and put into context in the trial. Only through discovery can the parties decide what—if

---

**1.** The law, which first was codified in 1875, was originally enacted in 1789. H.R.Rep.No. 1461, 85th Cong., 2d Sess., *U.S.Code Cong. & Ad.News* 3352 (1958).

**2.** 5 U.S.C. Section 552 (1980).

any—of the documentary evidence they will offer at the trial. The trial court's duty to search for the truth cannot be frustrated by bureaucratic obstinancy.

Since the NBS regulations restricting access to evidence are "not rational and based on consideration of the relevant factors," they cannot weather judicial scrutiny. *FCC v. National Citizens' Committee for Broadcasting,* 436 U.S. 775, 803, 98 S.Ct. 2096, 56 L.Ed. 696 (1978). Rather, this Court concludes that they are contrary to congressional intent and thus "not in accordance with law." [3] In the interest of justice these regulations cannot be allowed to preclude the discovery sought by USS.

### ORDER

IT IS ORDERED that the plaintiff's motion for subpoena compliance is GRANTED. Bruce W. Christ is ordered to appear, and the National Bureau of Standards is ordered to produce the requested documents, at a time and place to be agreed upon by counsel, or, in the absence of such agreement as this Court will order upon appropriate motion.

---

**3.** The Government argues that the outcome of this case should be controlled by *United States v. Allen,* 554 F.2d 398 (10th Cir. 1977) and *Saunders v. Great Western Sugar Co.,* 396 F.2d 794 (10th Cir. 1968). The Court, however, finds those cases to be distinguishable.

In the *Allen* case, a criminal defendant in a pretrial hearing sought testimony from a United States Attorney. In refusing to testify, the United States Attorney referred to a Department of Justice regulation prohibiting employees, without departmental approval, from disclosing information or producing material acquired in the performance of official duties. *See* 28 C.F.R. Section 16.22 (1974). However, that regulation operated in conjunction with another rule requiring the party seeking the testimony to submit to the department a summary of the testimony desired. *See* 28 C.F.R. Section 16.23(c) (1974). The defendant had failed to deliver such a summary. In upholding departmental control over employee disclosures, therefore, the Court did so at least partly because of express procedural prerequisites

that, in contrast to the instant case, were not met by the defendant. *See United States v. Allen,* 554 F.2d 398, 406 (10th Cir. 1977).

In the *Saunders* case, defendants in an antitrust suit endeavored to subpoena information and documents from the Small Business Administration (SBA). SBA regulations regarding subpoena compliance were virtually identical to those of NBS in the instant case. *See* 13 C.F.R. Section 102.7, cited in *Saunders v. Great Western Sugar Co.,* 396 F.2d 794, 794–95 (10th Cir. 1968). The Court, however, noted the plaintiff's argument that the information sought would be cumulative—a factor not existing in this case. Furthermore, the Court observed that "the defendants are entitled to disclosure unless governmental privilege forbids." *Id.* at 795. Since this Court has determined that no privilege exists for Christ, and the Government has conceded that the NBS regulations do not translate into a claim of privilege, the *Saunders* case actually undermines rather than enhances the force of the Government's argument.