**In re President George W. BUSH and The George W. Bush Foundation, Relators.**

**No. 05–09–00484–CV.**

Court of Appeals of Texas, Dallas.

June 12, 2009.

G. Luke Ashley, John H. Martin, Thompson & Knight, P.C., Leah M. Boyd, Dallas, for President George W. Bus.

Kent F. Brooks, Law Office of Kent F. Brooks, Lawrence J. Friedman, James Robert Krause, Carter Boisvert, Friedman & Feiger, L.L.P., Dallas, for Real Party in Interest.

Before Justices MOSELEY, O'NEILL, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

Relators President George W. Bush and The George W. Bush Foundation filed this

mandamus proceeding after the trial court entered an order compelling the deposition of former President George W. Bush in a lawsuit over Southern Methodist University's purchase of the University Garden Condominiums. We conclude the trial court abused its discretion in compelling the deposition and relators have no adequate remedy by appeal. We therefore conditionally grant the writ of mandamus.

Gary Vodicka, a former owner of units in University Garden Condominiums, sued SMU, related entities and certain individuals for various causes of action, including breach of fiduciary duties, DTPA violations, breach of contract, fraud, breach of property rights, and conspiracy. Robert E. Tafel, also a former University Garden Condominiums owner, intervened. The factual allegations of the lawsuit, in summary, are that beginning in 1998, SMU, through the defendants, began acquiring individual units within the complex on SMU's behalf. The governing charter of the complex provided that at any time, on agreement of 75% of the aggregate ownership interest in the condominiums, the condominium regime could be terminated and the entire property sold. By 2005, defendants had acquired 97% of the units and, by resolution passed at a homeowners' association meeting, voted to terminate. SMU ultimately purchased the property which included five condominium units previously owned by Vodicka and Tafel.

In February 2008, the SMU Board of Trustees and the George W. Bush Presidential Library Foundation Board voted on the agreement establishing SMU as the site of the George W. Bush Presidential Center. Vodicka and Tafel allege that SMU, through the defendants, acted "to allow the pretense of obsolescence" within the complex, "without making disclosure" to condominium owners of the intended use of the complex, and illegally gained title to the University Garden Condominiums because SMU needed to include the University Gardens land as part of the George W. Bush Presidential Library.

After engaging in extensive discovery, including the taking of depositions of Ray Hunt, a member of SMU's Board of Trustees and key contact with the President,[1] SMU President Gerald Turner and White House Counsel Harriet Miers, Vodicka filed a motion to depose former President Bush, asserting Bush was a "fact witness" who "participated in meetings, and conversations with key agents and representatives regarding the property at issue." Vodicka asserted there were "about 7 categories of information, areas of inquiry" over which he sought to question President Bush. Vodicka did not, however, identify those seven categories, either generally or specifically.

President Bush and the George W. Bush Foundation filed a response providing, "President Bush was not involved at any level in SMU's plans for and decisions to acquire the University Gardens property," and also stating that Vodicka failed to identify any specific information he needed to obtain from President Bush. Relators further asserted Vodicka (1) had not demonstrated President Bush possessed material information and (2) had not fully utilized other available means to obtain the information he claimed he needed to support his case. Attached to the response were deposition excerpts of officials involved in the planning of the presidential library. Additionally, relators requested that if the trial court failed to deny Vodicka's motion outright, it require Vodicka to submit specific questions it sought to ask in deposition under the guidelines outlined

---

1. Hunt's deposition has not been completed.

in *United States v. Poindexter,* 732 F.Supp. 142 (D.D.C.1990).

In reply, Vodicka asserted he wanted to depose the former president "as a fact witness for activities or conduct he engaged in or participated in involving his individual private and unofficial capacity, including but not limited to, the representations made to him by Ray Hunt and/or Gerald Turner, and the information provided to him by such individuals."

The trial court conducted a hearing on the motion. During the hearing, Vodicka testified he "need[ed] [President Bush's] deposition more for what he recalls Ray Hunt and Gerald Turner telling him and showing him, than what it is that Mr. Bush has in his knowledge." The trial court ultimately signed an order compelling President Bush's deposition.

In that order, the trial court determined the deposition was appropriate under the standards of *Poindexter,* which governs the taking of testimony from former or current presidents, and under state law, as outlined in *In re Alcatel,* 11 S.W.3d 173 (Tex.2000), which addresses apex depositions of high-level corporate officials. The trial court found President Bush "clearly has relevant and material information about the central issues of this case." In particular, the trial court suggested President Bush "could shed light" on allegations that SMU needed the land for the library; "would likely know whether SMU was the only real contender for the Presidential library or simply one of four finalists as the Defendants have contended"; and "would also know when he first expressed his decision to select SMU as the sole finalist for the library." The trial court found that President Bush's testimony "would be material to the Plaintiffs' assertions about SMU's intentions for University Gardens" and SMU's intent "may also be relevant to Plaintiff's claim for exempla-

ry damages in the case." Additionally, the trial court found "Plaintiffs have attempted to obtain this information through other means (namely the deposition of [Harriet] Miers and [Ray] Hunt) and have been unsuccessful" and they had shown "there is no other likely source of this information, other than from the deposition of George Bush." Finally, the judge, noting "limitations are necessary given the contentious nature of the litigation and recognizing the inconvenience the deposition may impose on President Bush," limited the taking of the deposition to three and one half hours; allowed President Bush to select the site of the deposition within Dallas County; and offered to supervise the deposition "if President Bush requests this protection." The order did not contain any substantive limits on the questions or categories of questions to which President Bush would be subjected.

■ President Bush and the Foundation argue the trial court abused its discretion and misapplied the law in compelling the deposition. In order to obtain mandamus relief, relators must show both that the trial court has abused its discretion and that they have no adequate appellate remedy. *In re Prudential Ins. Co.,* 148 S.W.3d 124, 135–36 (Tex.2004) (orig.proceeding); *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). Relators have met this burden.

■ The taking of a deposition of a former or sitting president is an extraordinarily rare event. *See Poindexter,* 732 F.Supp. at 144 (noting "[h]istory records less than a dozen instances of testimony of Presidents of the United States in judicial or congressional proceedings in two hundred years of American history"); *see also Jones v. Clinton,* 869 F.Supp. 690, 698 (E.D.Ark.1994) (explaining need to avoid litigation that could "conceivably hamper the President in conducting the duties of

his office"), *aff'd in part, rev'd in part,* 72 F.3d 1354 (8th Cir.1996); *Halperin v. Kissinger,* 401 F.Supp. 272, 274 (D.D.C.1975) (finding "a balancing test is necessary to resolve the competing interests of presidential privilege and the legitimate needs of the judicial process"). In the history of this country, few such depositions have occurred, and all have been in federal court proceedings. *Poindexter,* 732 F.Supp. at 144. To the Court's knowledge, no state court has ever before compelled the deposition of a former president. As the federal courts have recognized, former presidents may be required to give testimony in some cases, but "these courts have also sought to exercise this power in a way that would be least damaging to the Presidency or onerous to the particular individual occupying the Office, to the extent that this was possible and consistent with the rights of the litigant who was in need of such testimony." *Id.* at 146. Accordingly, the deposition of a former president should only be compelled when "his testimony would be material as tested by a meticulous standard, as well as being necessary in the sense of being a more logical and more persuasive source of evidence than alternatives that might be suggested." *Id.*

▪ First, the trial court's order cannot be supported by the apex deposition standard outlined in *Alcatel.* *See Alcatel,* 11 S.W.3d at 176. The issues relating to the deposition of a sitting or former President differ from the issues relating to the deposition of a high-level corporate executive. As discussed in *Poindexter,*

> future Presidents and their advisors might be substantially inhibited in their deliberations if they knew that, absent the properly rare and extraordinary invocation of executive privilege ... the President could subsequently be compelled to testify with frequency and for

> non-essential or relatively trivial reasons....

*Poindexter,* 732 F.Supp. at 147–48 (citations omitted). Further,

> it would hardly do to require the former President to claim executive privilege with respect to the entire inquiry (even as to questions to which it would not properly apply) or be deemed to have waived it altogether. This is so particularly since, as the Supreme Court has instructed, executive privilege should not "be lightly invoked." *United States v. Reynolds,* 345 U.S. 1, 7, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

*Id.* at 148. For reasons of comity and the policy considerations discussed in *Poindexter,* we conclude the decision to allow the deposition of a sitting or former President is not controlled by the standards applicable to apex depositions.

▪ Our review of the record indicates that real parties in interest Vodicka and Tafel did not meet either prong of the *Poindexter* standard. First, they did not provide sufficient information for the trial court to have found materiality by a meticulous standard. According to real parties in interest, President Bush "possesses or may possess" information relevant to the claims against defendants and argues the "timing of events and representations made to President Bush" will show whether SMU misrepresented its purposes in acquiring University Gardens and whether SMU and the other defendants had the requisite mental state to support an award of exemplary damages. Vodicka focuses on two meetings: a 2001 "five minute" conversation between Ray Hunt and President Bush at the White House during which the concept of SMU as a site for the library was introduced, and a 2002 meeting between Hunt, Gerald Turner, Harriet Miers, and President Bush at his ranch in Crawford, Texas involving additional un-

disputed efforts to convince President Bush to consider SMU as the site for his Library. A draft planning document given to the President during the 2002 meeting, produced during discovery and introduced at the hearing, outlines that University Gardens "is currently being purchased by the University and will continue to be used for housing faculty, staff, students, and members of the non-university community in the immediate future.... Were the Presidential Center to be located either on SMU Boulevard or Mockingbird Lane, this land would be used to augment the grounds surrounding the Library facility." The specific ways in which any information told to President Bush during these meetings would be material to what SMU and the other defendants did or did not tell the University Gardens property owners who sold their units have not been detailed by real parties in interest.

Having read Vodicka's "Motion to Depose Fact Witness George W. Bush and Motion to Set Procedures, Terms, and Conditions for Examination," his "Reply to George W. Bush's Response and The George W. Bush Foundation's Response to Plaintiff's Motion to Compel the Deposition of George W. Bush and Motion for Protective Order," and his testimony at the hearing on the motion to compel, it appears Vodicka himself is unclear as to why he needs the deposition of President Bush. In his motion, he simply stated President Bush "participated in meetings, and conversations with key agents and representatives regarding the property at issue in this case," and said there were "about 7 categories of information, areas of inquiry over which Plaintiff seeks to depose former President Bush." He did not identify any of these areas in his motion. His reply was no more specific on this subject than the original motion. At the hearing, he testified he needed the deposition more for what Bush "recalls Ray Hunt and Gerald Turner telling him and showing him, than what it is that Mr. Bush has in his knowledge."

The trial court did not require real parties in interest to submit for consideration the questions they sought to ask President Bush. Nevertheless, the trial court found President Bush would have "relevant and material information" about "central issues" in this case. The trial court did identify three areas it believed were material to the allegations in the lawsuit: (1) whether SMU needed land for the library; (2) whether SMU was the only real contender for the library; and (3) when President Bush first expressed his decision to select SMU as the sole finalist. However, the trial court never explained why these issues were central, or even why they were relevant, stating only that President Bush's testimony would be material to "Plaintiff's assertions about SMU's intentions for University Gardens." Although the trial court limited the deposition with respect to place and time, it placed no limitations on the subject matter into which real parties in interest could inquire.

In contrast, "[i]n order to facilitate a meticulous review of the subpoena," the trial court in *Poindexter* ordered the defendant to provide a list of specific questions he wished to ask President Reagan, and to serve copies of those questions on opposing counsel to allow them to contest whether the defendant's showing of relevance was adequate. *Id.* at 148. In response, Poindexter provided a list of 183 specific questions, covering discrete categories of information that "no one could seriously deny" were directly related to Poindexter's anticipated defenses. The questions related to circumstances where the former President and the defendant "were obviously the only persons present during a particular exchange" and the subject was "directly material to a charge or a

defense." *Id.* at 149. Even then, the court reviewed and struck a number of the proposed questions for a variety of reasons, including their over breadth or lack of materiality or relevancy. *Id.* at 150. We conclude real parties in interest have made no showing of materiality as measured by the "meticulous standard" detailed in *Poindexter.* Moreover, we conclude the trial court's refusal, over relator's objections, to follow the procedure outlined in *Poindexter* demonstrates the court failed to test the materiality of the sought-after testimony by that standard. *Id.* at 147.

█ The trial court also found there was no other likely source of the sought-after information. Absent the specific questions sought to be asked, there is no basis for any determination, express or implied, that President Bush's testimony is "necessary in the sense of being a more logical and more persuasive source of evidence than alternatives that might be suggested." *Id.*

Further, the parties had taken numerous depositions prior to the hearing on the motion to compel, including depositions of Hunt, Turner, and Miers; real parties in interest have not completed Hunt's deposition. Tafel and Vodicka had the opportunity to ask all of these witnesses about the meetings in question. Hunt, Turner, and Miers all testified the meetings were no more than general conversations: first, introducing the concept of SMU as a potential site for the library and second, conversations about the suitability of SMU as the host university for the library. Hunt testified he and President Bush never discussed specific locations on the SMU campus in relation to the library. Real parties in interest may not like the answers they have received from these witnesses, but that has no bearing on whether President Bush's testimony would be necessary. No evidence presented establishes that President Bush's knowledge of either of these meetings, or of any of the three subjects identified by the trial court, would be "a more logical and more persuasive source of evidence than alternatives that might be suggested." *Id.*

Thus, even if real parties in interest had shown President Bush had testimony that was material as tested by a "meticulous standard" relevant to a Presidential deposition (which they did not), they still failed to make the required showing of necessity for the President's testimony. Accordingly, the trial court did not correctly apply the standard outlined in *Poindexter.*

"[A] clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Walker,* 827 S.W.2d at 840. Relators have thus met the first requirement necessary for mandamus relief. Further, relators have no adequate remedy at law if the deposition is allowed to go forward. *See Alcatel,* 11 S.W.3d at 175 (granting mandamus relief when trial court wrongly denied motion to quash deposition notices). Relators have therefore met the second requirement to obtain mandamus relief.

Accordingly, we conditionally grant the relators' petition for writ of mandamus. A writ will issue only in the event the trial court fails (1) to vacate the portion of its April 17, 2009 "Order on Motions to Compel the Deposition of President George W. Bush and Mrs. Laura Bush" that grants the motion to compel the deposition of President Bush and (2) to enter an order denying the motion to compel the deposition of President George W. Bush.