**NBD BANK, N.A., Plaintiff–Petitioner,**

v.

**Donna D. BENNETT, in her official capacity as Acting Indiana Commissioner of Insurance, Defendant–Respondent.**

**No. IP94–862–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 27, 1994.

See also 874 F.Supp. 924.

she awarded NBD its insurance agent license.

Peter J. Rusthoven, Barnes & Thornburg, Indianapolis, IN, for NBD Bank N.A.

Thomas H. Ristine, Ice Miller Donadio & Ryan, Indianapolis, IN, for amici curiae.

Terry G. Duga, Deputy Atty. Gen., Indianapolis, IN, for Donna D. Bennett.

David A. Winston, Nat. Assoc. of Life Underwriters, Washington, DC, for Indiana Ass'n of Life.

Jeffrey M. Yates, Independent Ins. Agents of America, Inc., Alexandria, VA, for Independent Ins. Agents.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

SHIELDS, United States Magistrate Judge.

This cause is before the court on the plaintiff-petitioner's Motion for Summary Judgment, the defendant-respondent's Brief in Opposition, and the plaintiff-petitioner's Reply Brief. In addition, amici curiae the American Bankers Association, the Association of Banks in Insurance, the Bankers Roundtable, the Consumer Bankers Association, and the Indiana Bankers Association have filed a Statement of Points and Authorities in support of plaintiff-petitioner; amici curiae the Indiana State Association of Life Underwriters and the Independent Insurance Agents of Indiana have filed a brief in support of defendant-respondent and in opposition to plaintiff-petitioner's motion for summary judgment. The court, having considered the arguments of the parties and the amici curiae, and being duly advised, **DENIES** the plaintiff-petitioner's motion and **GRANTS** summary judgment in favor of defendant-respondent for the reasons set forth below.

### BACKGROUND

This action arises out of the application of plaintiff-petitioner, NBD Bank, N.A., ("NBD") to the Indiana Commissioner of Insurance for a license to act as an insurance agent from its bank branch in Corydon, Indiana. The National Bank Act, 12 U.S.C. § 92 ("Section 92"), provides that a national bank located in a place with a population of no more than 5,000 may act as an insurance agent; Corydon is such a place.

After an administrative hearing, the Commissioner granted NBD an insurance agent's license. However, based on her interpretation of Section 92, the Commissioner geographically restricted that license, permitting NBD to sell insurance only "within the geographic boundaries of a town with a population of 5,000 or less in which it is located and doing business." Final Order Granting Limited Insurance Agent License to NBD Bank, N.A., at 3.

NBD filed this action against defendant Donna Bennett, in her official capacity as Acting Indiana Commissioner of Insurance, seeking declaratory and injunctive relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983. Specifically, NBD seeks both a declaration that the Commissioner's interpretation of Section 92 is incorrect in that the statute does not require that a geographic restriction on NBD's insurance agent license and an injunction requiring the Commissioner to approve NBD's application to act as an

insurance agent without the geographic restriction.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." There are no factual disputes in this case; the sole issue is whether Section 92 authorizes a bank located and doing business in a community with a population of 5,000 or less to sell insurance to customers located anywhere in the state. If it does, NBD is entitled to summary judgment; if it does not, but instead limits the bank to selling insurance within the community in which it is located, the Commissioner is entitled to summary judgment.

Section 92 provides:

In addition to the powers now vested by law in national banking associations organized under the laws of the United States any such association located and doing business in any place the population of which does not exceed five thousand inhabitants, as shown by the last preceding decennial census, may, under such rules and regulations as may be prescribed by the Comptroller of the Currency, act as agent for any fire, life, or other insurance company authorized by the authorities of the State in which said bank is located to do business in said state, by soliciting and selling insurance and collecting premiums on policies issued by such company....

12 U.S.C. § 92. NBD asserts that Section 92 was designed "to enhance the attractiveness and viability of *national banks being located in ... smaller communities, by providing an additional source of revenue for banks in such locations.*" Brief in Support of Motion for Summary Judgment of Plaintiff–Petitioner NBD Bank, N.A., at 11 (emphasis in original). NBD then argues that, because Section 92 does not contain an express geographic limitation on a bank's authority to sell insurance, under the doctrine of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), this court must defer to the determination of the Comptroller of the Currency, the agency charged by Congress with promulgating regulations under Section 92, that a geographic limitation does not exist. This court disagrees.

The Comptroller, in a 1986 opinion letter, interpreted Section 92 to provide that

a national bank or its branch which is located in a place of 5,000 or under population may sell insurance to existing and potential customers located anywhere. In other words, while the bank or bank branch must be located in a small town, it can sell insurance to persons and businesses located outside that town.

1986 Letter from Judith A. Walter, Senior Deputy Comptroller for National Operations, *quoted in Independent Ins. Agents of Am., Inc. v. Ludwig*, 997 F.2d 958, 959 (D.C.Cir. 1993). This interpretation was reiterated in a May 26, 1994, opinion letter specifically addressing NBD's application for an insurance agent's license.

In *Chevron*, the Supreme Court set forth the methodology for judicial review of an agency's construction of a statute it administers. The initial question[1] is whether Con-

---

1. If the court determines that the statute in question is silent or ambiguous in respect to the disputed issue, the second question is whether the agency's answer is based on a permissible construction of the statute.

   "The power of an administrative agency to administer a congressionally created ... program *necessarily requires the formulation of policy and making of rules to fill any gap left,* implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231 [94 S.Ct. 1055, 1071, 39 L.Ed.2d 270] (1974). If Congress has explicitly left a gap for the agency to fill, there

   is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

   *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2782.

gress has addressed the issue because, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781. Congressional intent may be explicitly stated in the statute or it may be determined employing traditional tools of statutory construction. *Batanic v. I.N.S.,* 12 F.3d 662, 664 (7th Cir.1993) (citing *Chevron,* 467 U.S. at 842–45, 104 S.Ct. at 2781–83) ("The review of an agency's construction of a statute involves the initial determination of whether Congress has spoken precisely to the question at issue by employing traditional tools of statutory construction."). "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear Congressional intent.... If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9.

Section 92 is a simple piece of legislation that accomplishes one thing—it provides banks located in communities with populations of not more than 5,000 with the authority to act as insurance agents. Logic and common sense dictates that Congress had an intent, one way or the other, regarding the geographic scope of this authority. Either Congress intended to permit banks in small towns to sell insurance only to customers within those towns, or it intended to permit those banks to sell insurance to customers anywhere.

■ The legislative history of the statute is instructive in ascertaining which alternative Congress intended. *See Pension Benefit Guaranty Corp. v. LTV Corp.,* 496 U.S. 633, 649, 110 S.Ct. 2668, 2677, 110 L.Ed.2d 579 (1990) (applying *Chevron* analysis and reviewing legislative history to determine whether "clear congressional intent" existed on issue in question). In 1916, the 64th Congress considered amendments to the Federal Reserve Act. The Act as it then existed did not empower banks to sell insurance. In July, 1916, John Skelton Williams,

the Comptroller of the Currency, wrote a letter to Senator Robert L. Owens, the Chairman of the Senate Banking and Currency Committee. In this letter, the Comptroller wrote of the plight of country banks and noted that

there are many banks located in country communities where the small deposits which the banks receive make it somewhat difficult for the banks to charge on their loans only the rates of interest permitted by law and at the same time yield a satisfactory return to shareholders, and in many such cases banks have been tempted to exact excessive and in some cases grossly usurious rates on accommodations which they extend to local borrowers. It is unfortunately true that in many other cases banks have been demanding usurious rates of interest even though they had more than an average deposit and though adherence to the legal rates would still yield them liberal dividends on their shares.

64 Cong.Rec. 11,001 (1916). Comptroller Williams continued:

For some time I have been giving careful consideration to the question as to how the powers of these small national banks might be enlarged so as to provide them with additional sources of revenue and place them in a position where they could better compete with local state banks and trust companies.

．　　．　　．　　．　　．

My investigations lead me respectfully to recommend to Congress an amendment to the national bank act by which national banks located in villages and towns having a population of not exceeding 3,000 may be permitted to act as agents for insurance companies in the placing of policies of insurance....

It seems desirable from the standpoint of public policy and banking efficiency that this authority should be limited to banks in small communities. This additional income will strengthen them and increase their ability to make a fair return to their shareholders, while the new business is not likely to assume such proportions as to distract the officers of the bank from the

principal business of banking. Furthermore in many small places the amount of insurance policies written or mortgages to be placed on commission is not sufficient to take up the entire time of an insurance broker, and the bank is not therefore likely to trespass upon outside business naturally belong to others.

I think it would be unwise and therefore undesirable to confer this privilege generally upon banks in large cities where the legitimate business of banking affords ample scope for the energies of trained and expert bankers. I think it would be unfortunate if any movement should be made in the direction of placing the banks of the country in the category of department stores....

I inclose with this a draft of a proposed amendment to the national banking act designed to empower national banks located in towns of not over 3,000[2] population, under such regulations and restrictions as may from time to time be approved and promulgated by the Comptroller of the Currency to act as agents for the placing of insurance policies....

I respectfully recommend and urge the adoption of such an amendment for the reasons I have given.

*Id.*

Comptroller Williams's intent in recommending the provisions contained in Section 92 is clearly stated: to provide banks located in small towns with additional revenue in such a way that they would not be "distract[ed] from the principal business of banking" or "likely to trespass upon outside business naturally belonging to others," namely insurance agents. These objectives are furthered by permitting banks to sell insurance within the small communities in which they are located, where "the amount of insurance policies written ... is not sufficient to take up the entire time of an insurance broker," but are thwarted by permitting those banks to expand their insurance business beyond those small communities.

Senator Owens, the sponsor of the amendment, placed the Comptroller's letter in the Congressional Record and referred to it when proposing the amendment. *See* 64 Cong.Rec. 11,002 & 11,153 (1916) (noting the amendment "ha[d] been reported upon favorably by the Comptroller of the Currency"). The fact that Congress passed the amendment urged by Comptroller Williams and sponsored by Senator Owens leads this court to conclude that the "clear intent" of Congress in passing Section 92 was to permit banks located in small communities to sell insurance within those small communities only.

NBD urges this court to follow the lead of the D.C.Circuit Court of Appeals in *Ludwig,* 997 F.2d 958. In considering the same issue before this court, the D.C. Circuit Court held that Section 92 does not contain a geographic limitation. In reaching its opinion, the D.C.Circuit Court gave Comptroller Williams's letter only limited deference, discounting it as an "isolated remark[ ] on the floor of Congress," and, instead, accorded significance to the present interpretation accorded Section 92 by the Comptroller. This court disagrees with this evaluation of Comptroller Williams's letter because it fails to recognize that the letter, "[a]s a statement of one of the legislation's sponsors ... deserves to be accorded substantial weight in interpreting the statute." *See, Federal Energy Admin. v. Algonquin SNG, Inc.,* 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976) (citations omitted); *see also NLRB v. Fruit & Vegetable Packers & Warehousemen, Local 760,* 377 U.S. 58, 66, 84 S.Ct. 1063, 1068, 12 L.Ed.2d 129 (1964) (Black, J., concurring) (citations omitted) ("It is the sponsors that we look to when the meaning of the statutory words in is doubt."). Instead, this court joins with the Second and the Fifth Circuit Courts of Appeals and concludes that Comptroller Williams's letter is entitled to great deference in determining the intent of Congress in passing Section 92. *See Saxon v. Georgia Assoc. of Indep. Ins. Agents, Inc.,* 399 F.2d 1010, 1016 (5th Cir. 1968) (finding that "[i]t thus appears to be clear from the contemporaneous legislative history of Section 92 that Congress agreed with and acquiesced in" ideas expressed in

---

**2.** In Section 92, Congress increased the requisite population from 3,000 to 5,000.

Comptroller Williams's letter); *Variable Annuity Life Ins. Co. v. Clarke*, 998 F.2d 1295, 1302 (5th Cir.1993), *cert. granted by Ludwig v. Variable Annuity Life Ins. Co.*, — U.S. ——, 114 S.Ct. 2161, 128 L.Ed.2d 885 (1994) (quoting from and upholding the reasoning of *Saxon*); *American Land Title Assoc. v. Clarke*, 968 F.2d 150, 155–56 (2d Cir.1992), *cert denied by Ludwig v. American Land Title Assoc.*, — U.S. ——, 113 S.Ct. 2959, 125 L.Ed.2d 660 (1993) (also relying on the Comptroller's letter).

Furthermore, even if this court agreed with *Ludwig* that congressional intent was not clear, it would not agree with the *Ludwig* court's decision to defer to the Comptroller's present interpretation of Section 92. "Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." *Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). More specifically, "[i]t is well established that the prestige of a statutory construction by an agency depends crucially upon whether it was promulgated contemporaneously with enactment of the statute and has been adhered to consistently over time." *Barnett v. Weinberger*, 818 F.2d 953, 960–61 (D.C.Cir.1987) (footnotes omitted); *see also Laketon Asphalt Refining, Inc. v. United States Dept. of the Interior*, 624 F.2d 784, 797 (7th Cir.1980) (noting that an agency's contemporaneous interpretation is due particular deference). Here, Comptroller Williams's letter clearly expresses the Comptroller's views at the time Section 92 was passed, views which indicate an intent to geographically limit the sale of insurance by banks; the current position of the Comptroller is contrary to that original position and did not come into being until 1986, seventy years later. Therefore, it is Comptroller Williams's letter that is entitled to deference, not the Comptroller's 1986 opinion letter which supports NBD's position.

■ NBD also points to the *Ludwig* court's determination that the statutory structure of Section 92, as originally enacted, indicates that a geographic restriction on the sale of insurance was not intended by Congress. This argument is based on the fact that Section 92 originally contained a provision, repealed in 1982, which permitted banks in small communities to "act as the broker or agent for others in making or procuring loans on real estate located within one hundred miles of the place in which said bank may be located." The D.C. circuit court in *Ludwig*, found that this provision "indicates that 'Congress knew how to impose geographic restrictions when it wanted to.'" *Ludwig*, 997 F.2d at 960 (citations omitted). However, this court views the 100 mile range in the loan-brokering provision as an expansion of the "within the community" geographic limit which Congress imposed on the sale of insurance. It is a basic rule of statutory construction that statutory grants of privileges are to be strictly construed. *See* 73 Am.Jur.2d *Statutes* § 307 (1974) ("Indeed, every reasonable doubt should be so resolved as to limit the powers and rights claimed under the authority of the statute."). Here, Congress granted national banks located in small communities the privilege of acting as insurance agents or loan brokers, a privilege they did not enjoy prior to Section 92; the rule of statutory construction supports the conclusion that this Congress intended this privilege to be exercised only within those small communities, not throughout the entire state.[3]

Finally, interpreting Section 92 without a geographic restriction, as NBD would have this court do, defeats the purpose that NBD argues, that of "enhanc[ing] the attractiveness and viability of *national banks being*

---

**3.** The court in *Ludwig* also noted that it is futile to speculate how Congress in 1916 would have responded to today's "world of microchips, communication satellite, fax machines, direct mail and telephone solicitation, and all the other technologies and techniques that now enable a nationwide business to be conducted from any hamlet." *Ludwig*, 997 F.2d at 961. This is true, but this difference in technology helps to explain why Congress did not feel compelled to expressly recite its intent to geographically restrict the sale of insurance by banks. The 64th Congress could not have anticipated it would be feasible, or even possible, for a bank located in Corydon, Indiana, to sell insurance to customers located across the entire state, or even to customers located in an adjacent community.

*located* in ... smaller communities, by providing an additional source of revenue for banks in such locations"; if NBD can sell insurance statewide from its Corydon branch, it does not have an incentive to open branches in the numerous other small towns across the state of Indiana.

### CONCLUSION

For all of these reasons, the court finds that Section 92 of the National Bank Act authorizes a bank located and doing business in a community with a population of 5,000 or less to sell insurance only within that community. Therefore, the Commissioner properly limited NBD's insurance agent's license to those terms, and the Commissioner is entitled to summary judgment.

Accordingly, plaintiff-petitioner NBD Bank, N.A.'s motion for summary judgment is **DENIED** and summary judgment is **GRANTED** in favor of defendant-respondent Donna Bennett, Acting Commissioner of Insurance.